1  RON BENDER (SBN 143364)
*rb@lnbyb.com*
2  PHILIP A. GASTEIER (SBN 130043)
*pag@lnbyb.com*
3  JULIET Y. OH (SBN 211414)
*jyo@lnbyb.com*
4  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
5  Los Angeles, California 90067
Telephone:  (310) 229-1234
6  Facsimile:  (310) 229-1244
7
8  Proposed Counsel for Chapter 11 Debtor and
Debtor in Possession
9
10
11            **UNITED STATES BANKRUPTCY COURT**
12            **CENTRAL DISTRICT OF CALIFORNIA**
13               **LOS ANGELES DIVISION**
14

| | |
|---|---|
| In re: | ) Case No. 2:10-bk-44406-SB |
| | ) |
| APEX DIGITAL, INC., a California corporation, | ) Chapter 11 |
| | ) |
| | ) **STIPULATION REGARDING INTERIM** |
| Debtor. | ) **USE OF CASH COLLATERAL** |
| | ) |
| | ) DATE:    August 23, 2010 |
| | ) TIME:    1:30 p.m. |
| | ) PLACE:   Courtroom "1539" |
| | )          255 E. Temple Street |
| | )          Los Angeles, California |
| | ) |
| | ) |
| | ) |
| | ) |

24

25        This Stipulation Regarding Interim Use of Cash Collateral (the "**Stipulation**") is

26  entered into by and between secured creditor Kith Electronics Limited, a company organized

27  under the laws of Hong Kong ("**KEL**"), and Apex Digital, Inc., debtor and debtor in possession

28  in the above-captioned chapter 11 bankruptcy case (the "**Debtor**"), by and through their

respective counsel of record, and is made with reference to the following facts:

## **RECITALS**

A.      The Debtor is a leading producer and seller of consumer electronic products, including high-definition LCD televisions, home entertainment media devices, digital set top boxes and lighting products (u.g., solar powered lights), which are carried and sold in hundreds of retail outlets nationwide.

B.      The Debtor is indebted to KEL as of August 13, 2010 in the principal amount of $12,067,734.80 plus attorney's fees in the amount of $130,395.25, subject to amendment to include additional attorney's fees which may be incurred (the "**Debt**"), the amount of which Debt the parties acknowledge will be subject to adjustment in the event any prior payments made by Apex to KEL which have been previously credited to Apex in arriving at the amount of the Debt become uncollectible or in the event KEL is required to return any such payments previously credited.

C.      The Debt is secured pursuant to that certain Security Agreement dated as of September, 2008 (as amended and modified, if applicable) by and between Apex and KEL and any other related documentation (collectively, the "**Loan Documentation**")**,** and thereby secured by a valid, perfected first priority security interest and lien against all of Apex's assets including Apex's current and future accounts receivable and inventory. A true and correct copy of the Security Agreement is attached hereto as Exhibit "2".

D.      Pursuant to the Security Agreement, the Debtor granted to KEL a continuing valid, first priority security interest in all present and future "**Collateral**," as defined in Exhibit "B" to the Security Agreement, owned or thereafter acquired by the Debtor to secure payment and performance of the Debtor's obligations under the Loan Documents. The Collateral includes, among other things, all of the Debtor's accounts and accounts receivable, inventory and deposit accounts, and all of the proceeds derived from the foregoing assets.

E.      On August 12, 2008, KEL recorded a financing statement with the California Secretary of State (Filing No. 08-7168547339) to perfect its security interest in the Collateral

1  (the "**Financing Statement**").  A true and correct copy of the Financing Statement is attached

2  hereto as Exhibit "3."

3        F.      The Debtor and KEL agree that, as of August 13, 2010, Events of Default exist

4  under the Loan Documentation and that the Debtor owed the Debt in the principal amount of

5  $12,067,734.80 plus attorney's fees in the amount of $130,395.25 (subject to amendment to

6  include additional attorney's fees which may be incurred).  KEL asserts that interest on the

7  Debt will continue to accrue on and after the Petition Date (defined below).

8        G.      On August 17, 2010 (the "**Petition Date**"), the Debtor filed a voluntary petition

9  under Chapter 11 of 11 U.S.C. § 101 et seq. (as amended, the "**Bankruptcy Code**").  The

10  Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy

11  estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

12        H.      By virtue of KEL's security interest in the Collateral as set forth above, KEL has

13  an interest in "Cash Collateral" within the meaning of section 363(a) of the Bankruptcy Code.

14  In this regard, Debtor acknowledges and agrees that any cash or cash equivalent (or other

15  proceeds) received by Debtor after the Petition Date constitute proceeds of the Collateral and

16  are, therefore, part of KEL's Cash Collateral within the meaning of section 363(a) of the Code

17  to the same extent KEL has a security interest in such Collateral pre-petition.

18        I.      The Debtor has requested that KEL agree, and KEL has in fact agreed, to the

19  Debtor's use of cash collateral on an interim basis pending a final hearing, under the terms and

20  conditions set forth in this Stipulation.

21        J.      KEL has stated that there is no assurance that KEL will agree to any use of its

22  Cash Collateral beyond this initial period.  If KEL does agree to any further use of its Cash

23  Collateral, it may require more terms and conditions than are set forth in this Stipulation.

24        K.      Nothing contained in this Stipulation shall, or is intended to, affect or change the

25  ownership rights of the respective parties in the Collateral.

26        NOW, THEREFORE, for and in consideration of the mutual promises stated herein, and

27  without waiving its due on transfer and due on encumbrance rights, but subject to approval of

28  the Bankruptcy Court, the following is hereby stipulated and agreed to by and among the

3

parties:

**AGREEMENT**

1.    <u>Recitals</u>.  The recitals are incorporated herein by this reference.  The parties agree that the matters set forth in the recitals are true and correct.

2.    <u>Use of Cash Collateral</u>.  Subject to the other provisions of this Stipulation, including the extension provision at paragraph 27 below, the parties hereto agree that effective from the Petition Date until the earlier of (i) September 10, 2010, (ii) the entry of an order dismissing the Debtor's bankruptcy case, or (iii) the termination of this Stipulation as set forth in paragraph 15 below, the Debtor may use its cash which constitutes KEL's Collateral ("**Cash Collateral**"), on the following terms and conditions:

a.    Subject to further order of the Bankruptcy Court, or as otherwise consented to by KEL in writing, Cash Collateral may be used by the Debtor for only the items identified in the budget ("**Budget**") stipulated to and incorporated hereat by reference and attached hereto as Exhibit "1."  The Debtor shall be authorized to use Cash Collateral in accordance with the Budget, subject to a permitted deviance of up to 10% of the total expenses (but not purchases) for any week with any unused portions to be carried over into the following week on a line-item by line-item basis only.  In connection with its use of Cash Collateral, the Debtor shall first use that portion of the Cash Collateral that is attributable to the Debtor's lighting business (<u>e.g.</u>, collection of accounts receivable relating to the lighting business) ("**Lighting A/R**") and exhaust such source of Cash Collateral prior to using any portion of the Cash Collateral that is attributable to the Debtor's television business (<u>e.g.</u>, collection of accounts receivable relating to the television business) ("**Television A/R**").  Debtor is only authorized to use Cash Collateral attributable to the Television A/R on the following terms:  If the Lighting A/R is insufficient to pay the amounts set forth in the Budget in Weeks 3 and/or 4, the Television A/R may be used in Weeks 3 and 4 up to the amounts set forth in the Budget for those weeks, subject to the permitted deviance of up to 10% of the total expenses (but not purchases) for such weeks.  In the event that Debtor uses any

Television A/R in excess of $25,000 total per week in Weeks 3 and 4 (the "**Excess Amounts**"), Debtor shall remit such Excess Amounts into the Television AR Account (as defined below) as soon as the cash becomes available to do so, and to the extent Debtor's ability to pay the operating expenses set forth in the Budget is not compromised, but in no event later than September 10, 2010, unless otherwise ordered by the Court. Debtor is not otherwise authorized to use the Cash Collateral attributable to the Television A/R.

b.    The Debtor shall have the right to use Cash Collateral during the period covered by this Stipulation as specifically set forth herein to pay expenses which are not contained in the Budget or in amounts which are greater than as set forth in the Budget (subject to the permitted 10% deviance) with the prior written consent of KEL without the need for any further Bankruptcy Court order. If KEL does not consent, the Debtor reserves the right to seek authority to pay such expenses on an emergency or otherwise expedited basis.

c.    Unless the Court orders otherwise or as otherwise set forth in the Budget or herein, KEL expressly does not consent to Debtor's use of KEL's Cash Collateral for payment of any fees or expenses incurred by Debtor's bankruptcy counsel or Debtor's other professionals, or for any fees or expenses (including professional fees and expenses) incurred by any official Committee which may be appointed in connection with the Debtor's bankruptcy case.

3.    <u>Segregation of Television A/R</u>: Debtor shall deposit all receipts and income obtained by Debtor in connection with the Television A/R, including all funds currently maintained in the Debtor's Hanmi Bank accounts (which funds the parties hereto agree are derived exclusively from the collection of Television A/R) once such funds are unfrozen and made available to the Debtor and its estate, but excluding the $18,027.09 of cash contained in the Debtor's non-Hanmi Bank accounts as of the Petition Date, into a segregated debtor-in-possession account (the "**Television AR Account**"). The funds in the Television AR Account shall not be used or otherwise spent by the Debtor, except as expressly permitted pursuant to

1    Paragraph 2.b hereof, or as otherwise authorized by written agreement of the parties or Court

2    order.  No other funds shall be placed into or disbursed from the Television AR Account.

3        4.    Reporting to KEL.  The Debtor shall provide KEL with weekly cash flow

4    reports, a written Budget reconciliation report in form and detail acceptable to KEL, which

5    report compares Debtor's actual receipts, income, expenditures and cash flow versus the

6    amounts for receipts, income expenditures and cash flow originally projected by Debtor in the

7    Budget, on a line-item by line-item basis, and copies of the Monthly Operating Reports as filed

8    with the Bankruptcy Court and the Office of the United States Trustee.

9        5.    Access to the Debtor's Books and Records.  In addition, on no less than five (5)

10   business days' notice following a written request from KEL, the Debtor shall provide, make

11   available, and otherwise permit access to such financial and operating information as

12   representatives of KEL shall reasonably request from time to time and which can reasonably be

13   made available by Debtor (taking into account such things as the Debtor's manpower, time,

14   cost, scope of the request, etc.), including, without limitation, all books and records relating to

15   the Collateral.

16       6.    Replacement Lien.  As adequate protection for the Cash Collateral used by

17   Debtor from and after the commencement of this bankruptcy case, and only to the extent that the

18   Cash Collateral is used (subject to the uses as permitted by this Stipulation), KEL shall be

19   granted a replacement lien (the "**Replacement Lien**") on, and security interest in, any and all

20   assets of Debtor of any kind or nature whatsoever, now owned or hereinafter acquired

21   (excluding any causes of action arising under Sections 105, 506(c), 542, 543, 544, 545, 547,

22   548, 550, 551, 552, and 553 of the Bankruptcy Code, and all proceeds, rents, products, or profits

23   thereof (the "**Post-Petition Collateral**").

24            a.    The Replacement Lien and security interest shall have the same priority,

25            extent and validity as KEL's liens and security interests existing prepetition in the Cash

26            Collateral used by the Debtor.  The Replacement Lien and security interest granted

27            herein are valid, enforceable and fully perfected, and no filing or recordation or any

28            other act in accordance with any applicable local, state or federal law is necessary to

6

create or perfect such lien and security interest; provided, however, that upon request of KEL, the Debtor shall execute such security and perfection documentation as may be reasonably required to create or perfect such liens under applicable nonbankruptcy law, including without limitation, UCC-1 financing statements and notices to depository banks.

  b.  The Replacement Lien does **not** extend to avoidance actions.

  c.  The Replacement Lien shall at all times not be subject to priming or subordination and shall be senior and superior to any and all other mortgages, liens, claims and security interests existing on the Petition Date (except for creditors, if any, with valid, binding, enforceable, unavoidable and perfected liens and security interests on the Post-Petition Collateral existing on the Petition Date that were senior in priority to the security interests of KEL immediately prior to the Petition Date). In the event it is determined that there is a creditor with valid, binding, enforceable, unavoidable and perfected lien and security interest on the Collateral that is senior in priority to the security interest and lien of KEL, the Replacement Lien shall be secured by a second priority lien in all Post-Petition Collateral that is subject to valid, binding, enforceable, unavoidable and perfected mortgages, liens and security interests existing in the Post-Petition Collateral at the time of the Petition Date.   KEL shall not be required to consent to use of its Cash Collateral if the Court in the Bankruptcy Case grants any mortgages, security interests or liens, including liens created under Section 364(d) of the Code, which are senior to or on a parity with KEL's pre-petition security interests or liens.

  7. <u>Adequate Protection Payments</u>:  As adequate protection for any diminution in the value of the interests of KEL in the Collateral (including Cash Collateral) on account of Debtor's use of KEL's Cash Collateral, and other decline, if any, in value arising out of the automatic stay or the Debtor's use, sale, depreciation or disposition of the Collateral, including Cash Collateral, KEL shall receive additional adequate protection in the form of  payments

1    made to KEL every four weeks, commencing in Week 5 in the amount of $25,000 for each

2    payment.

3        8.    <u>Protection as to Actual Use</u>:  If any party in interest objects to this Stipulation

4    and such objection is sustained, or if the Bankruptcy Court does not approve this Stipulation,

5    KEL shall be fully protected as set forth herein to the extent of Debtor's actual use of KEL's

6    Cash Collateral prior to entry of a Court Order curtailing or otherwise modifying the provisions

7    of this Stipulation.

8        9.    <u>No Limitation on Remedies</u>:  Nothing contained in this Stipulation shall limit,

9    impair or in any way affect (i) KEL's right at any time to seek relief from the automatic stay to

10   enforce any of its remedies under the Loan Documents or Financing Statement or applicable

11   law; and (ii) KEL's rights under Section 507(b) of the Bankruptcy Code in the event that the

12   adequate protection provided to KEL hereunder is insufficient to compensate for the diminution

13   in value of the interest of KEL in the Collateral during the Bankruptcy Case or any successor

14   case.

15       10.    <u>No Waiver</u>.  Nothing contained in this Stipulation and the Order thereon shall be

16   deemed or construed to waive, reduce or otherwise diminish the rights of KEL under the Loan

17   Documents, Financing Statement, or the Bankruptcy Code.    Nothing contained in this

18   Stipulation and the Order thereon shall be deemed or construed to waive, reduce, or otherwise

19   diminish the rights, claims and defenses of the Debtor under the Loan Documents, Financing

20   Statement, or the Bankruptcy Code.

21       11.    <u>No Impact on Right to Seek Other or Different Relief</u>.  Nothing contained in this

22   Stipulation and the Order thereon shall be deemed or construed to waive, reduce or otherwise

23   diminish the rights of KEL to seek additional or different adequate protection of its interests

24   under the Loan Documents and Financing Statement, or to take any other action in this

25   Bankruptcy Case, including, but not limited to, seeking relief from the automatic stay or

26   dismissal or conversion of this case at any time.  The Debtor reserves all of its rights, claims and

27   defenses with respect to any additional or different relief requested, or any action taken, by KEL

28   in this Bankruptcy Case.

12.    <u>No Admission Regarding Adequate Protection</u>.    Nothing contained in this Stipulation and the Order thereon shall be deemed or construed to be an admission by either party that KEL is or is not adequately protected.

13.    <u>Notices to KEL</u>.    Performance due to KEL hereunder, including without limitation, notices, financial reports, and requests for approval of budget modifications, shall be made to KEL at the following address:

Kith Electronics Limited
Attn:  King Chun Hui
1/F Hing Lung Commercial Building
68 Bonham Strand East
Hong Kong
Tel:  852 2544 8778
Fax:  852-2544-8778
Email:  andrewhui@kith.hk

In addition, copies of all notices or other communications hereunder shall be sent to KEL's counsel at the following address:

Kathy Bazoian Phelps, Esq.
Danning, Gill, Diamond & Kollitz, LLP
2029 Century Park East, Third Floor
Los Angeles, California 90067
Tel:  (310) 277-0077
Fax: (310) 277-5735
Email:  KPhelps@dgdk.com

14.    <u>Default</u>.    If the Debtor fails to perform fully and timely any provision, term or condition of this Stipulation, the Debtor shall be in default under this Stipulation.  In the event that KEL asserts a default by the Debtor, it shall give written notice to the Debtor of its assertion, and the Debtor shall have five (5) business days after receipt of such notice from KEL to cure any such default ("**Cure Period**").  The Debtor may use Cash Collateral during the Cure Period, and the Debtor shall have the right to schedule an emergency hearing during the Cure Period to seek continuing Court authority to use Cash Collateral.  Notice of any default, or any other notices required to be given hereunder, shall be provided to the Debtor by facsimile,

1  personal or overnight delivery at the following addresses, or at such other address(es) as Debtor

2  may give to KEL in writing:

3

4                                Apex Digital, Inc.
                       Attn:  David Ji, Chief Executive Officer
5                           301 Brea Canyon Road
                            Walnut, California 91789
6                              Tel:  (909) 923-8686
                               Fax:  (909) 923-8675
7                         Email:  dji@apexdigitalinc.com

8

9          In addition, copies of all notices or other communications hereunder shall be sent by

10  facsimile to counsel for the Debtor at the following address:

11

                                Philip A. Gasteier, Esq.
12                                Juliet Y. Oh, Esq.
                           Levene Neale Bender Yoo & Brill LLP
13                        10250 Constellation Blvd., Suite 1700
                               Los Angeles, CA  90067
14                             Tel:  (310) 229-1234
                               Fax:  (310) 229-1244
15                     Emails:  pag@lnbyb.com; jyo@lnbyb.com

16

17          15.    Termination.    This Stipulation (including KEL's consent to use of Cash

18  Collateral) shall terminate at the earliest of the following: (i) upon the expiration of the Cure

19  Period without a timely cure of the asserted default; (ii) upon grant of relief from stay to KEL;

20  (iii) conversion, dismissal or closing of this case, for any reason whatsoever; or (iv) September

21  10, 2010, unless such date is extended pursuant to paragraph 27 of this Stipulation.

22          16.    Time Is Of The Essence.  In consideration of the facts and circumstances under

23  which the Stipulation is executed, and the terms, conditions and provisions of this Stipulation,

24  the parties expressly acknowledge and agree that time is of the essence and that all deadlines

25  and time periods provided for under the Stipulation are absolute and final.

26          17.    Headings.    The headings set forth herein are inserted for convenience of the

27  parties only, and shall not be used to interpret or construe or in any way affect the meaning of

28  the terms and provisions of this Stipulation.

18.    <u>Representations and Warranties</u>.  The parties hereto further represent and warrant to one another as follows:

a.    Each party hereto has received independent legal advice of attorneys of that party's choice with respect to the advisability of executing this Stipulation, and prior to the execution of this Stipulation by each party, that party's attorney reviewed the Stipulation and discussed the Stipulation with the party.

b.    Except as expressly stated in this Stipulation, no party hereto has made any statement or representation to any other party hereto regarding any facts relied upon by said party in entering into this Stipulation, and each party hereto specifically does not rely upon any statement, representation or promise of any other party hereto in executing this Stipulation, except as expressly stated in this Stipulation.

c.    Each party and its attorneys have made such investigation of the facts pertaining to this Stipulation, and all other matters pertaining thereto, as they deem necessary.

d.    The terms of this Stipulation are contractual and not a mere recital.

e.    This Stipulation has been carefully read by, the contents hereof are known and understood by, and it is signed freely by each party executing this Stipulation, and each party executing this Stipulation in a representative capacity is empowered to do so.

f.    Each of the parties hereto has the full right and authority to enter into this Stipulation, subject only to the provisions of paragraph 26 with respect to Bankruptcy Court approval, and the attorney executing this Stipulation on behalf of his or her client has the full right and authority to commit and bind his or her client to this Stipulation.

19.    <u>Binding on Successors</u>.  This Stipulation shall be binding on KEL and the Debtor, and any and all assigns and/or successors-in-interest to any of these persons or entities, including but not limited to, any trustee in a Chapter 11 or 7 proceeding if the case is converted, provided that KEL's consent to the use of Cash Collateral is subject to earlier termination as set forth in Paragraph 15.

20.    <u>Use of Number and Gender</u>.    Whenever the context requires, the masculine gender shall include the feminine or neuter, and a singular number shall include the plural, and vice versa.

21.    <u>Neutral Construction</u>.    This Stipulation is the product of negotiation among the parties hereto and represents the jointly conceived, bargained-for, and agreed-upon language mutually determined by the parties to express their intentions of entering into this Stipulation. Any ambiguity or uncertainty in this Stipulation shall be deemed to be caused by, or attributable to, all parties hereto collectively.  In any action to enforce or interpret this Stipulation, the Stipulation shall be construed in a neutral manner, and no term or provision of this Stipulation, or this Stipulation as a whole, shall be construed more or less favorably to any one party, group or groups of parties, to this Stipulation.

22.    <u>Integration</u>.    Except as expressly provided in this Stipulation, this Stipulation is the final written expression and complete and exclusive statement of all the agreements, conditions, promises and covenants among the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, negotiations, representations, understandings and discussions among the parties and/or their respective counsel with respect to the subject matter conveyed hereby.  Any amendment or modification of this Stipulation, in order to be legally binding, must be in writing specifically referring to the Stipulation and signed by duly authorized representatives of all parties hereto.

23.    <u>No Agreement to Provide Financial Accommodation</u>.    No provision of this Stipulation shall in any way impose upon KEL any duty or obligation to provide any financing or financial accommodation to the Debtor, or any other party, to collect, sell, lease or otherwise dispose of any of KEL's collateral, to proceed against any party, person, individual or entity, to proceed against or exhaust any security held by KEL or any other party, person, individual or entity, or to otherwise pursue any action, right or remedy whatsoever in KEL's power.

1    24.    <u>No Benefit to Non-Parties</u>.  Nothing contained in this Stipulation is intended, nor

2  shall it be construed or deemed to, confer any rights, powers or privileges on any person, firm,

3  partnership, corporation or other entity not an express party hereto or a successor-in-interest

4  thereof, including, without limitation, any and all sureties and guarantors with respect to any

5  indebtedness owed by the Debtor to KEL, or otherwise.  KEL reserves all of its rights under

6  law, equity or otherwise with respect to such non-parties and/or non-successors-in-interest.

7    25.    <u>Counterpart Signatures</u>.  This Stipulation may be signed in counterpart.

8    26.    <u>Bankruptcy Court Order</u>.  This Stipulation shall be submitted forthwith to the

9  Bankruptcy Court for approval and, in that regard, the Debtor shall give such notice and

10  opportunity to be heard as is required under Federal Rule of Bankruptcy Procedure 4001 or

11  other applicable law.

12    27.    <u>Extensions</u>.  This Stipulation can be further extended by the parties in writing

13  without further order of the Bankruptcy Court.

14    IN WITNESS WHEREOF, the parties hereto execute this Stipulation Regarding Use of

15  Cash Collateral, by and through their respective counsel, as of the date set forth opposite their

16  respective signatures.

17
DATED: August 17, 2010    KITH ELECTRONICS LIMITED
18

19
By: _____
20    Kathy Bazoian Phelps
    Danning, Gill, Diamond & Kollitz, LLP
21    Attorneys for Secured Creditor, Kith
    Electronics Limited
22

23  DATED: August 17, 2010    APEX DIGITAL, INC.

24
By: _____
25    Philip A. Gasteier
    Juliet Y. Oh
26    Levene, Neale, Bender, Yoo & Brill L.L.P.
    Proposed Attorneys for Debtor and Debtor
27    in Possession, Apex Digital, Inc.

28

# EXHIBIT "1"

**APEX Digital, Inc.**
**Projected Cash Flow**
**As of 08/13/2010**

| Week Ending/Month | 8/8/2010 | 8/15/2010 | 8/22/2010 | 8/29/2010 | 9/5/2010 | 9/12/2010 | 9/19/2010 | 9/26/2010 | 10/3/2010 | 10/10/2010 | 10/17/2010 | 10/24/2010 | 10/31/2010 | 13 Week |
| Week Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | $19,977 | $19,977 | $1,007,820 | $1,527,050 | $2,043,555 | $2,840,825 | $4,005,469 | $4,168,813 | $4,172,650 | $4,090,401 | $4,052,072 | $3,958,990 | $3,414,897 | $19,977 |
| | | | | | | | | | | | | | | |
| Collection of AR – lighting | - | 620,460 | 533,000 | 302,756 | - | - | - | - | 697 | - | 1,938 | 4,573 | 697 | 1,464,121 |
| Services | | | | | | | | | | 100,000 | | | | 100,000 |
| Collection of AR – TV | - | 403,731 | 57,926 | 240,608 | 896,045 | 1,255,159 | 227,725 | 66,196 | - | - | - | - | - | 3,147,390 |
| Others | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | - | 1,024,191 | 590,926 | 543,364 | 896,045 | 1,255,159 | 227,725 | 66,196 | 697 | 100,000 | 1,938 | 4,573 | 697 | 4,711,511 |
| | | | | | | | | | | | | | | |
| **Purchases** | | | | | | | | | | | | | | |
| Vendors | - | 477 | 477 | 1,670 | 2,862 | 504 | 504 | 37,021 | 596 | 3,048 | 30,409 | 526,716 | 35,830 | 640,114 |
| Freight In | - | - | - | - | 3,200 | - | - | - | - | 6,400 | 3,200 | 3,200 | 3,200 | 19,200 |
| Broker's Fee & Duties | - | - | - | - | - | 4,825 | - | - | - | 32,406 | 1,626 | 4,877 | 1,740 | 45,474 |
| Others | - | | | | | | | | | | | | | |
| **Total Purchases** | - | 477 | 477 | 1,670 | 2,862 | 8,529 | 504 | 37,021 | 596 | 41,854 | 35,235 | 534,793 | 40,770 | 704,788 |
| **Operating Expenses** | | | | | | | | | | | | | | |
| Advertising / Promotion | - | | | | | | 99 | - | | | | | | 297 |
| Alarm / Security | | | 99 | | | | | | | | | 99 | | |
| Auto Expenses / Travel | | 1,000 | 1,000 | 1,200 | 1,800 | 1,200 | 1,200 | 1,200 | 1,400 | 1,000 | 1,000 | 1,500 | 1,500 | 15,000 |
| Commission | 0 | 2,753 | | | | 31,023 | | | | | 47,899 | | | 81,675 |
| Computer - Tech Support / Parts | 0 | | | | 4,400 | | | | | 4,400 | | | | 8,800 |
| Credit Card payments | 0 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,500 | 1,000 | 12,500 |
| Development R & D | | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 1,500 |
| EDI & Internet | 0 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 900 |
| Freight In & Out | 0 | 625 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 11,625 |
| Insurance | | | | 5,539 | | - | 6,249 | | 5,000 | | | 6,249 | | 23,037 |
| Legal Fee | | 2,000 | | | | 2,000 | | 2,000 | | | | 2,000 | 2,000 | 10,000 |
| License & Registration | 0 | 125 | 125 | | 125 | | 125 | | 125 | 125 | | 125 | | 875 |
| Office Expenses/Supplies/Postages | 0 | 250 | 250 | | 250 | | 250 | | 250 | 250 | 250 | 250 | 250 | 2,250 |
| Outside Service | 0 | 20,000 | 250 | 250 | 250 | 20,000 | 250 | 250 | 250 | 20,000 | 250 | 250 | 250 | 62,250 |
| Payroll Services | | 98 | | | 98 | | 75 | | | 75 | | 75 | | 496 |
| Professional / Consultant Fee | | 5,000 | 6,438 | 5,000 | | 5,000 | | 11,438 | | 6,438 | 5,000 | | 5,000 | 49,314 |
| Rent - Building | 0 | | | | 18,063 | | | | | 18,063 | | | | 36,126 |
| Rent - Equipment & Auto | | 2,200 | | | | | 2,200 | | | | | 2,200 | | 6,600 |
| Repair & Maintenance | 0 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 1,500 |
| Salary & Wages / Retirement | | | 55,000 | | 55,000 | | 45,000 | | 45,000 | | 45,000 | | 45,000 | 290,000 |
| Taxes | | | 4,290 | | 4,290 | | 3,510 | | 3,150 | | 3,510 | | 3,510 | 22,260 |
| Telephone | 0 | 156 | 156 | 156 | 156 | 156 | 156 | 156 | 156 | 156 | 156 | 156 | 156 | 1,875 |
| Trade Show | 0 | 219 | 219 | | | | 219 | | | | | | | 656 |
| Warehouse | 0 | 94 | 94 | 94 | 94 | 94 | 94 | 94 | 94 | 94 | 94 | 94 | 94 | 1,125 |
| Utilities | | 750 | | | | | | 750 | | | | | | 1,500 |
| Others | 0 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 1,500 |
| **Total Operating Expenses** | - | 35,872 | 71,219 | 14,689 | 68,913 | 79,986 | 61,877 | 23,338 | 57,350 | 96,475 | 59,785 | 13,873 | 60,285 | 643,661 |
| | | | | | | | | | | | | | | |
| **Restructuring** | | | | | | | | | | | | | | |
| Adequate Protection Payment | | | | - | 25,000 | | | | 25,000 | | | | 25,000 | 75,000 |
| Public Relations | | | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | | | | | | 10,000 |
| Utility Deposit | - | - | - | 8,500 | | | | | - | - | - | - | - | 8,500 |
| U.S. Trustee Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| **Total Restructuring** | - | - | - | 10,500 | 27,000 | 2,000 | 2,000 | 2,000 | 25,000 | - | - | - | 25,000 | 93,500 |
| | | | | | | | | | | | | | | |
| **Total Disbursements** | - | 36,349 | 71,696 | 26,859 | 98,775 | 90,515 | 64,381 | 62,359 | 82,946 | 138,329 | 95,020 | 548,666 | 126,055 | 1,441,949 |
| | | | | | | | | | | | | | | |
| **Ending Cash Balance** | $19,977 | $1,007,820 | $1,527,050 | $2,043,555 | $2,840,825 | $4,005,469 | $4,168,813 | $4,172,650 | $4,090,401 | $4,052,072 | $3,958,990 | $3,414,897 | $3,289,539 | $3,289,539 |

# EXHIBIT "2"

## SECURITY AGREEMENT
### All Assets

This SECURITY AGREEMENT (the "Agreement"), dated as of September __, 2008 is executed by and between APEX DIGITAL, INC., a California corporation ("Owner"), with principal business address at 301 Brea Canyon Road, Walnut, CA 91789 and KITH ELECTRONICS LIMITED, a company organized under the laws of Hong Kong, with principal business address at 1/F Hing Lung Commercial Building, 68 Bonham Strand East, Hong Kong ("Secured Party").

WHEREAS, Secured Party distributes consumer electronic products, accessories and various other products ("Products");

WHEREAS, Owner sells Products;

WHEREAS, Secured Party shall transfer title to the Products to Owner, and wishes to secure its interest in all assets of Owner as consideration for advancing Products to Owner for sale;

WHEREAS, in addition to this Agreement, Owner has agreed to establish a bank account jointly controlled by Secured Party and Owner, in order to receive monies from the sales of Products;

THEREFORE, for valuable consideration, the receipt and adequacy of which are acknowledged, Owner and Secured Party agree as follows:

1.   **Definitions**.  For purposes of this Agreement, capitalized terms not otherwise defined in this Agreement shall have the meanings provided below or in the Commercial Code.

1.1   **Agreement** - means this Security Agreement, any concurrent or subsequent rider to this Security Agreement and any extensions, supplements, amendments or modifications to this Security Agreement and/or to any such rider.

1.2   **Bankruptcy Code** - means the U.S. Bankruptcy Code as now enacted or hereafter amended.

1.3   **Business Day** - means any day other than a day on which commercial banks are authorized or required by law to close in the State of California.

1.4   **Commercial Code** - means the Uniform Commercial Code, as now enacted or hereafter amended, applicable in the State of California.

1.5   **Credit Documents** - means this Agreement, all other agreements and documents now or hereafter executed by Owner, Guarantor or any other Person and delivered to Secured Party at Secured Party's request in connection with the credit extended to Owner and all extensions, renewals, modifications or replacements thereof.

1.6   **Exhibit** - means any Exhibit attached hereto and incorporated herein.

1.7   **Governmental Authorities** - means: (i) the United States; (ii) the state, county, city or other political subdivision in which any of the Collateral is located; (iii) all other

1

DOCSSFO-12525665.3

governmental or quasi-governmental authorities, boards, bureaus, agencies, commissions, departments, administrative tribunals, instrumentalities and authorities; and (iv) all judicial authorities and public utilities having or exercising jurisdiction over Owner, the Guarantor or the Collateral. The term "Governmental Authority" means any one of the Governmental Authorities.

1.8    **Governmental Permits** - means all permits, approvals, licenses and authorizations now or hereafter issued by any Governmental Authorities for or in connection with the conduct of Owner's business or the ownership or use by Owner of the Collateral, its other assets or its properties.

1.9    **Governmental Requirements** - means all existing and future laws, ordinances, rules, regulations, orders or requirements of all Governmental Authorities applicable to Owner, any Guarantor, the Collateral or any of Owner's or any Guarantor's other assets or properties.

1.10    **Guarantor** - means, collectively, the Person or Persons, if any, now or hereafter guaranteeing payment of the credit or payment or performance of the Secured Obligations (or pledging collateral therefor).

1.11    **Guaranty** - means every guaranty agreement of any kind (including third-party pledge agreements) now or hereafter executed by any Guarantor, and all extensions, renewals, modifications and replacement thereof.

1.12    **Insolvency Proceeding** - means any proceeding commenced by or against any person or entity, including Owner, under any provision of the United States Bankruptcy Code, as amended, or under any other bankruptcy or insolvency law, including, but not limited to, assignments for the benefit of creditors, formal or informal moratoriums, compositions or extensions with some or all creditors.

1.13    **Judicial Officer or Assignee** - means any trustee, receiver, controller, custodian, assignee for the benefit of creditors or any other person or entity having powers or duties like or similar to the powers and duties of a trustee, receiver, controller, or assignee for the benefit of creditors.

1.14    **Secured Party** - means KITH ELECTRONICS LIMITED.

1.15    **Secured Party Expenses** - means all costs and expenses incurred by Secured Party in connection with: (i) this Agreement or other Credit Documents; (ii) the transactions contemplated hereby or thereby; (iii) the enforcement of any rights hereunder or thereunder; (iv) the recordation or filing of any documents; (v) Secured Party's Attorneys' Fees; (vi) the creation, perfection or enforcement of the lien on any item of Collateral; and (vii) any expenses incurred in any proceedings in the U.S. Bankruptcy Courts in connection with any of the foregoing.

1.16    **Reserved.**

1.17    **Owner's Books** - means all of Owner's books and records including, but not limited to: minute books; ledgers, and records indicating, summarizing or evidencing Owner's assets, liabilities, the Collateral, the Secured Obligations, and all information relating thereto; records indicating, summarizing or evidencing Owner's business operations or financial condition; and all computer programs, disc or tape files, printouts, runs, and other computer prepared information and the equipment containing such information.

2

DOCSSFO-12525665.3

18

**1.18  Permitted Liens** - means any and all of the following:  (i) liens for taxes, fees, assessments or other governmental charges or levies, either not delinquent or being contested in good faith by appropriate proceedings; (ii) prior settlement with Phillips; and (iii) any other liens and encumbrances agreed to in writing by Secured Party.

**1.19  Person** - means any natural person or any entity, including any corporation, partnership, joint venture, trust, limited liability company, unincorporated organization or trustee, or Governmental Authority.

**1.20  Secured Obligations** - means all debts, obligations and liabilities of Owner to Secured Party under or in connection with this Agreement and any of the other Credit Documents, regardless whether such Secured Obligations are currently existing, or hereafter created or arising, whether liquidated or unliquidated, including Attorneys' Fees. Notwithstanding anything to the contrary contained in the Credit Documents, the term "Secured Obligations" shall not include any debts that are or may hereafter constitute "consumer credit" which is subject to the disclosure requirements of the federal Truth-In Lending Act (15 U.S.C. Section 1601, et seq.) or any similar state law in effect from time to time, unless Secured Party and Owner shall otherwise agree in a separate written agreement.

**2.  Security Interest.**  Owner hereby grants to Secured Party a continuing valid, first priority, security interest in all present and future Collateral, defined in **Exhibit B**, now owned or hereafter acquired to secure payment and performance of the Secured Obligations.

**3.  Security Documents.**  Secured Party may file all financing statements and confirmation statements and other documents as necessary to perfect and maintain perfected Secured Party's security interest.  Owner shall execute and deliver to Secured Party all documents which Secured Party may reasonably request: (i) to perfect, and maintain perfected, Secured Party's security interests in the Collateral or, (ii) to maintain or recognize the priority and enforceability of the Secured Party's lien on the Collateral, and (iii) to implement the terms of this Agreement. If requested by Secured Party, Owner will have such documents executed by relevant third parties and delivered to Secured Party.

**4.  Representations and Warranties.**  Until the Secured Obligations are satisfied in full, Owner makes the following representations and warranties:

**4.1  Owner.**  Owner's full and correct name and address are indicated in **Exhibit A.**  If Owner is an entity, Owner: (i) is duly organized, validly existing and in good standing under the laws of the state specified in **Exhibit A**; (ii) is qualified to do business and is in good standing in each jurisdiction in which the ownership of its assets or the conduct of its business requires qualification as a foreign entity; and (iii) conducts business under the trade name(s), if any, specified in **Exhibit A**, and no other trade name(s).

**4.2  Title to Assets.**  Owner has and at all times will have:  (i) legal and equitable title to the Collateral, free of all liens and other interests, except Permitted Liens; and (ii) the right to grant the security interest in the Collateral.

**4.3  No Offsets or Defenses.**  Each account, right to payment, instrument, document, chattel paper and other item of Collateral is (or will be when arising or issued) the valid and legally enforceable obligation, subject to no defense or set off (other than those arising in the ordinary course of business) of the obligor named therein.

3

DOCSSFO-12525665.3

4.4 **Authority.** This Agreement has been duly authorized and, upon execution and delivery, will constitute the legal, valid and binding agreement and obligation of Owner, enforceable in accordance with its terms.

4.5 **No Conflicts.** The execution, delivery and performance by Owner of this Agreement and the grant of the lien herein do not: (i) violate any Governmental Requirements applicable to Owner; (ii) constitute a breach of any provision of the organizational papers of Owner; or (iii) constitute an event of default under any agreement of Owner.

4.6 **Lawsuits; Compliance; Taxes.** There is no material lawsuit, tax claim or adjustment or other dispute pending or threatened against Owner or the Collateral. Owner is in compliance with all Governmental Requirements and has satisfied, prior to delinquency, all taxes due or payable by Owner or assessed against the Collateral.

4.7 **Continuing and Cumulative Warranties.** The warranties and representations set forth in this Section shall be true and correct in all material respects at the time of execution of this Agreement and shall constitute continuing representations and warranties as long as any of the Secured Obligations remain unpaid or unperformed. The warranties and representations shall be cumulative and in addition to any other warranties and representations which Owner shall give to Secured Party, now or hereafter.

5. **Covenants.** Owner agrees, until the Secured Obligations are satisfied in full:

5.1 **Transfer or Release of Assets.** Owner shall not transfer or sell any Collateral except in the ordinary course of business and except for the transfer of obsolete or non-serviceable goods.

5.2 **Lien Free.** Owner shall keep the Collateral free of all liens and interests, except Permitted Liens.

5.3 **Fixtures.** Owner shall not permit any Collateral to be affixed to any real property without first assuring that Secured Party's lien will be senior to any other interest then or thereafter held by any lienholder on, or owner of, the real property.

5.4 **Maintenance of Collateral.** Owner shall not: (i) misuse or permit misuse of any Collateral; or (ii) use or permit use of any Collateral for any unlawful purpose, or in any negligent manner or outside the ordinary course of Owner's business. Owner shall keep all tangible Collateral in good order and repair, normal depreciation excepted.

5.5 **Records.** As regards any Collateral, Owner shall: (i) maintain a standard and modern system of accounting in accordance with generally accepted accounting principles, or such other accounting principles as agreed to by Secured Party, consistently applied; and (ii) not modify or change its method of accounting. Owner's Books shall be accurate and complete. On Secured Party's request, Owner shall deliver to Secured Party copies of Owner's Books.

5.6 **Inspection.** Owner shall permit Secured Party and any of Secured Party's representatives, on demand, during business hours, to have access to and to inspect the Collateral (wherever located) and to examine and copy Owner's Books pertaining to the Collateral. Owner shall deliver to Secured Party such reports and information concerning the Collateral as Secured Party may reasonably request.

4

voluntary or involuntary Insolvency Proceeding; (iv) is the subject of any involuntary lien; (iv) is the subject of any receivership; or (v) is the subject of any receivership or similar proceeding.

**6.6** **Event of Default under Credit Documents.** There is an Event of Default under any of the other Credit Documents.

**7.** **Secured Party's Rights and Remedies; Waiver.**

**7.1** **Remedies.** If an Event of Default occurs and is not cured by Owner or waived by Secured Party, Secured Party shall have all rights and remedies of a secured party under the Commercial Code and as otherwise provided at law or in equity. Secured Party shall provide such notices as are required under the Commercial Code. Secured Party may dispose of any item of Collateral in a manner permitted by the Commercial Code. All proceeds from the Collateral shall be applied or disbursed as permitted under the Commercial Code.

**7.2** **Waivers.** Owner waives: (i) all rights, remedies and benefits under California Civil Code Sections 1479 and 2822(a); and (ii) all rights to require marshalling of assets or liens or all rights to require Secured Party to exercise any other right or power or to pursue any other remedy which Secured Party may have.

**7.3** **Judicial Action.** If Secured Party, at its option, seeks to take possession of any or all of the Collateral by court process, Owner irrevocably and unconditionally agrees that a receiver may be appointed by a court for such purpose without regard to the adequacy of the security for the Secured Obligations and such receiver may, at Secured Party's option, collect or dispose of all or part of the Collateral.

**8.** **Liability for Deficiency.** Owner shall remain liable for any deficiency remaining on the Secured Obligations after disposition of all or any of the Collateral and Secured Party's application of the proceeds thereof to the Secured Obligations.

**9.** **Actions.** Owner authorizes Secured Party, without notice or demand and without affecting its liability hereunder, and without consent of Owner, to: (i) take and hold additional security for the payment of the Secured Obligations with the consent of the party providing such security; and (ii) accept guarantors for the payment of the Secured Obligations.

**10.** **Power of Attorney.** Owner irrevocably appoints Secured Party, with full power of substitution, as its attorney-in-fact, coupled with an interest, with full power, in Secured Party's own name or in the name of Owner: (i) in the event of a default to sign, record and file all documents referred to in this Agreement; and (ii) after an Event of Default: (a) to endorse any checks, notes and other instruments or documents evidencing the Collateral, or proceeds thereof; (b) to discharge claims, demands, liens, or taxes affecting any of the Collateral; (c) to settle, and give releases of, any insurance claim that relates to any of the Collateral, obtain payment of claim, and make all determinations with respect to any such policy of insurance, and endorse Owner's name on any proceeds of such policies of insurance; or (d) to instruct any Person having control of any books or records relating to the Collateral to give Secured Party full rights of access thereto. Secured Party shall have the right to exercise the power of attorney granted in this Section directly or to delegate all or part of such power. Secured Party shall not be obligated to act on behalf of Owner as attorney-in-fact.

**11.** **Miscellaneous.**

**11.1** **Notices.** Any notice, demand or request required hereunder shall be given in writing (at the addresses set forth in **Exhibit A**) by any of the following means: (i) personal

6

DOCSSFO-12525665.3

**5.7**  **Delivery**.  On Secured Party's request (before or after an Event of Default), Owner shall deliver to Secured Party any instrument, document or chattel paper constituting Collateral, duly endorsed or assigned by Owner.

**5.8**  **Taxes**.  Owner shall pay all taxes relating to the Collateral when due.

**5.9**  **Insurance**.  Owner shall maintain reasonable insurance on all Collateral for all risks.

**5.10**  **Compliance with Applicable Laws.**  Owner shall comply with and keep in effect all Governmental Permits relating to it and the Collateral.  Owner shall comply with and shall cause the Collateral to comply with:   (i) all Governmental Requirements;  (ii) all requirements and orders of all judicial authorities which have jurisdiction over it or the Collateral; and (iii) all covenants, conditions, restrictions and other documents relating to Owner or the Collateral.

**5.11**  **Notifications.**  Owner shall promptly notify Secured Party of any material decline in value of, or loss of, or damage to, any Collateral.

**5.12**  **Expenses.**  Owner agrees to reimburse Secured Party for any and all Secured Party Expenses, and hereby authorizes and approves all advances and payments by Secured Party for items constituting Secured Party Expenses.

**5.13**  **Existence**.  If Owner is an entity:  (i) Owner will maintain its existence in good standing under the law of the state of its organization, (ii) will maintain its qualification as a foreign entity in each jurisdiction in which the nature of its business requires such qualification, and (iii) will not merge with any other entity without the consent of Secured Party.

**5.14**  **Further Assurances**.  Upon Secured Party's request, Owner, at Owner's expense, shall: (i) work with Secured Party to execute and deliver such further documents and notices reasonably necessary in connection with this Agreement; (ii) take reasonable action requested by Secured Party to carry out the intent of this Agreement and the other Credit Documents; and (iii) provide such reports and information available to Owner concerning the business, financial condition and business of Owner.

**6.**  **Events of Default**.  The occurrence of any one or more of the following events shall constitute an "Event of Default" under this Agreement, at the option of Secured Party:

**6.1**  **Breach**.  There is a breach of any provision of this Agreement or discovery that any material representations or warranty provided to Secured Party by, or on behalf of Owner, was materially misleading at the time given.

**6.2**  **Lien Priority.**  Secured Party shall cease to have a valid and perfected first priority lien on any of the Collateral subject only to Permitted Liens, if any,

**6.3**  **Material Impairment.**  There is a material impairment of the value of the Collateral.

**6.4**  **Seizure of Collateral.**  Any portion of the Collateral is subject to attachment, seizure or a writ or distress warrant, or is levied upon or comes into possession of any Judicial Officer or Assignee.

**6.5**  **Insolvency or Attachment**.  If Owner:  (i) fails to pay its debts as they become due (ii) commences dissolution or termination of its business; (iii) is the subject of any

DOCSSFO-12525665.3

service; (ii) electronic communication, whether by telex, telegram or telecopying or other form of electronic communications; (iii) overnight courier; or (iv) registered or certified, first class U.S. mail, return receipt requested, or to such other addresses as Secured Party or Owner may specify from time to time in writing.

Any notice, demand or request sent pursuant to either subsection (i) or (ii), above, shall be deemed received upon such personal service or upon dispatch by electronic means. Any notice, demand or request sent pursuant to subsection (iii), above, shall be deemed received on the Business Day immediately following deposit with the overnight courier, and, if sent pursuant to subsection (iv), above, shall be deemed received forty-eight (48) hours following deposit into the U.S. mail.

 11.2 **Choice of Law.** This Agreement shall be determined under, governed by and construed in accordance with California law.  The parties agree that all actions or proceedings arising in connection with this Agreement shall be litigated only in the state courts located in the County of Los Angeles, State of California, or the federal courts located in the Central District of California.  Owner waives any right Owner may have to assert the doctrine of *forum non conveniens* or to object to such venue and hereby consents to any court-ordered relief.

 11.3 **Successors and Assigns; Assignment.** This Agreement shall be binding and deemed effective when executed by Owner and accepted and executed by Secured Party.  This Agreement shall be binding on Secured Party's and Owner's successors and assigns.  Owner agrees that it may not assign this Agreement without Secured Party's prior written consent. Secured Party may assign, in whole or in part, all of its right, title and interest in and to this Agreement at any time without the consent of Owner.  In connection with any assignment, Secured Party may disclose all documents and information that Secured Party has or may hereafter have relating to Owner.  No consent to an assignment by Secured Party shall release Owner or any Guarantor from their obligations to Secured Party.

 11.4 **Severability; Waivers.** Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any provision.  No waiver by Secured Party of any of its rights or remedies in connection with this Agreement shall be effective unless such waiver is in writing and signed by Secured Party.  No act or omission by Secured Party to exercise a right as to any event shall be construed as continuing, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

 11.5 **Attorneys' Fees.** On demand, Owner shall reimburse Secured Party for all costs and expenses including, without limitation, reasonable attorneys' fees, costs and disbursements (and fees and disbursements of Secured Party's in-house counsel) (collectively "Attorneys' Fees") expended or incurred by Secured Party in any way in connection with the amendment and/or enforcement of this Agreement and Secured Party's rights hereunder and the Collateral whether or not suit is brought.  Attorneys' Fees shall include, without limitation, attorneys' fees and costs incurred in any State, Federal or Bankruptcy Court, and in any Insolvency Proceeding of any kind in any way related to this Agreement, or any item of Collateral and/or Secured Party's lien thereon.

 11.6 **Headings.** Article and section headings are for reference only and shall not affect the interpretation or meaning of any provisions of this Agreement.

7

DOCSSFO-12525665.3

**11.7  Integration; Amendment.**  No modification or amendment to this Agreement, or novation of the obligations under this Agreement, shall be effective unless in writing, executed by Secured Party and the other relevant parties. Except for currently existing obligations of Owner to Secured Party, all prior agreements, understandings, representations, warranties, and negotiations between the parties, whether oral or written, if any, which relate to the substance of this Agreement, are merged into this Agreement. Owner hereby waives the right to assert any agreement, promise, fact or any parol (oral) evidence which is contrary to the terms or representations specified in this Agreement.

**11.8  Counterparts; Electronic Signatures.**  This Agreement may be executed in counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute but one and the same agreement. A signed copy of this Agreement transmitted by a party to another party via facsimile or an emailed "pdf" version shall be binding on the signatory thereto.

**11.9  WAIVER OF JURY TRIAL.**  TO THE FULLEST EXTENT PERMITTED BY LAW, SECURED PARTY AND OWNER HEREBY VOLUNTARILY, UNCONDITIONALLY AND IRREVOCABLY WAIVE TRIAL BY JURY IN ANY LITIGATION OR PROCEEDING IN A STATE OR FEDERAL COURT WITH RESPECT TO, IN CONNECTION WITH, OR ARISING OUT OF THIS AGREEMENT OR THE OTHER CREDIT DOCUMENTS, OR THE SECURED OBLIGATIONS, OR ANY INSTRUMENT OR DOCUMENT DELIVERED IN CONNECTION HEREWITH OR THEREWITH OR THE TRANSACTIONS CONTEMPLATED HEREBY, INCLUDING WITHOUT LIMITATION, CLAIMS RELATING TO THE APPLICATION, OR THE VALIDITY, PROTECTION, INTERPRETATION, COLLECTION OR ENFORCEMENT THEREOF, OR ANY OTHER CLAIM OR DISPUTE HOWSOEVER ARISING (INCLUDING TORT AND CLAIMS FOR BREACH OF DUTY), BETWEEN SECURED PARTY AND OWNER.

[signature page follows]

8

This **Security Agreement** is executed as of the date stated at the top of the first page.

**Accepted:**

**SECURED PARTY:**                    OWNER:

KITH ELECTRONICS LIMITED        APEX DIGITAL, INC.

By: _____        By: _____

Name: _Andrew HUI_                  Name: _David L F Ji_

Title: _Director_                    Title: _CEO_

9

DOCSSFO-12525665.3

<u>EXHIBIT A</u>
TO
SECURITY AGREEMENT
All Assets

This **<u>Exhibit A</u>** is an integral part of the Agreement between Secured Party and Owner, and the following terms are incorporated in and made a part of the Agreement to which this **<u>Exhibit A</u>** is attached:

1.    **<u>Owner</u>:**  Owner represents that his/her/its name, address and state of incorporation or formation (if Owner is a registered entity) is as follows:

    1.1    **Name:  Apex Digital, Inc.**

    1.2    **Trade Names or DBAs (if any):** _____

    1.3    **Type of Entity and State of Formation or Incorporation: Corporation, California**

    1.4    **Address for Notices:**  301 Brea Canyon Road, Walnut, CA 91789

    1.5    **Tax Identification Number or Social Security Number:** _____

2.    **<u>Secured Party's Notice Address:</u>**

3.    1/F Hing Lung Commercial Building, 68 Bonham Strand East, Hong Kong

4.    **<u>Additional Covenants:</u>**

Exhibit A

DOCSSFO-12525665.3

**EXHIBIT B**
**TO**
**SECURITY AGREEMENT**
All Assets

## DESCRIPTION OF COLLATERAL

The Collateral ("Collateral") consists of all of the right, title and interest of Owner in and to the following assets whether currently existing or hereafter arising: (a) Equipment; (b) Inventory; (c) fixtures located at Owner's business location at the address set forth in this Agreement; (d) other Goods, Instruments and Documents; (e) Chattel Paper; (f) General Intangibles; (g) Accounts and all other obligations now or hereafter owing to Owner; (h) all deposit accounts and certificates of deposit, Payment Intangibles, including those maintained with Secured Party; (i) Investment Property and Commercial Property; (j) Letters of Credit Rights; (k) all Commercial Tort Claims and any other causes of action of Owner against third parties arising in connection with Owner's business, excluding only claims for death and personal injury; (l) all Supporting Obligations; (m) all proceeds and products of the foregoing; and (n) all of Owner's Books relating to the foregoing. Terms used herein shall have the meanings provided in the Commercial Code.

Unless otherwise defined herein, the terms used herein shall have the meaning provided in the Uniform Commercial Code, as now enacted or hereafter amended, applicable in the State of California.

Exhibit B

DOCSSFO-12525665.3

# EXHIBIT "3"

# INFORMATION REQUEST

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

| A. NAME & PHONE OF CONTACT [optional] | FILING OFFICE ACCT# |
|---|---|
| UCC Administrator 916-564-7800 | |

**B. RETURN TO: (Name and Address)**

CLAS INFORMATION SERVICES
2020 HURLEY WAY STE 350
SACRAMENTO, CA 95825
USA

**DOCUMENT NUMBER:** 25247580003
**ORDER DATE:** 06/08/2010 14:21
IMAGE GENERATED ELECTRONICALLY FOR WEB ORDER
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR NAME** to which this request relates - insert only <u>one</u> debtor name (1a or 1b) - do not abbreviate or combine names

| ORGANIZATION NAME | | | |
|---|---|---|---|
| | | | |
| INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

**2 INFORMATION OPTIONS RELATING TO UCC FILINGS AND OTHER NOTICES FILED IN FILING OFFICE THAT INCLUDE AS A DEBTOR THE NAME IDENTIFIED IN ITEM 1**

☐ For 2a and 2b, **mark this box** to request a search that is **COMPLETE** to include **lapsed and unlapsed** filings. UNLESS MARKED, SEARCH MAY BE INCOMPLETE.

2a. ☐ SEARCH RESPONSE with copies of ALL records found.      ☐ Please CERTIFY all copies **(additional $5.00 fee per record).**

2b. ☐ **SEARCH RESPONSE only.**

2c. ☑ **COPIES ONLY. Please complete the information below, as appropriate. For UCC3 records, include the type of UCC3 and corresponding filing date.**

| File Number | # of copies | # of CERTIFIED COPIES (ADD'L FEE APPLIES) | FILE DATE (USE FOR UCC3 ONLY) | Filing Type-Financing Statement, Cont.,Term.,Assign.,Amend. |
|---|---|---|---|---|
| 08-7168547339 | 1 | 1 | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**3. CALIFORNIA SECRETARY OF STATE'S OFFICE OFFERS THESE ADDITIONAL SEARCHING OPTIONS:**

3a. ☐ SEARCH TO REFLECT - Please run the search after the filing document accompanying this request has been filed.

3b. ☐ DEBTOR SEARCH LIMITED TO THE
FOLLOWING ADDRESS: _____

3c. ☐ DEBTOR SEARCH LIMITED FROM THIS DATE: _____

3d. ☐ SECURED PARTY LISTING: Insert only <u>one</u> name (organization or individual)

| ORGANIZATION NAME | | | |
|---|---|---|---|
| | | | |
| INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |
| CITY | STATE | COUNTRY | |

**FILING OFFICE COPY**

29

# State of California

## Secretary of State

I, **Debra Bowen** , Secretary of State of the State of California, hereby certify:

That the attached transcript of 2  page(s) was prepared by and in this office from the record on file, of which it purports to be a copy, and that it is full, true and correct.



**IN WITNESS WHEREOF**,  I execute this certificate and affix the Great Seal of the State of California this day of

June 08, 2010

Secretary of State

FILE #        087168547339

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

949 829 8866

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Law Offices of Steve Tsai, ALC
6 Morgan, Suite 112
Alton Business Park
Irvine, CA 92618
USA

DOCUMENT NUMBER: 18024120003
FILING NUMBER: 08-7168547339
FILING DATE: 08/12/2008 14:38
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Apex Digital, Inc. | | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 301 Brea Canyon Rd. | Walnut | CA | 91789 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | Corporation | CA | C2017290 ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| 2a. ORGANIZATION'S NAME |
|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| 3a. ORGANIZATION'S NAME |
|---|
| Kith Electronics Limited |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 68 Bonham Strand East, 1/F Hing Lung Commercial Bldg. | Hong Kong | | | CHN |

**4. This FINANCING STATEMENT covers the following collateral:**

See Attachment(s)

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

| ☐ 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY

(a)  Debtor's accounts and accounts receivable from customers such as Circuit City and Best Buy, whether now owed, existing or arising on or after the date of this statement;

(b)  All inventory such as digital-analog converter set top boxes, whether now owned or acquired by Debtor after the date of this statement, or in which Debtor may now have or in the future acquire an ownership or other interest, including, without limitation, inventory temporarily out of Debtor's custody or possession and any returns or repossessions of any products on any sales or accounts;

(c) All deposit accounts, negotiable and non-negotiable instruments, moneys, sources of money, uncalled capital, letters of credit and chattel paper, whether owned now or in the future by Debtor, or in which Debtor may now have or in the future acquire an interest of any kind;  AND

(d) All proceeds arising from any of the personal property and collateral described above, in any form, including but not limited to proceeds consisting of any of the above types of collateral; and all replacements, substitutions, renewals, returns, additions and accessories of the above collateral; and all rents, royalties, issues, documents of ownership; and all receipts of any of the foregoing.

32

| In re: | | CHAPTER 11 |
| --- | --- | --- |
| | APEX DIGITAL, INC., | |
| | Debtor(s). | CASE NO. 2:10-bk-44406-SB |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067.

A true and correct copy of the foregoing document described as: **STIPULATION REGARDING INTERIM USE OF CASH COLLATERAL,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 18, 2010**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Service information on attached page [X]

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL OR ATTORNEY SERVICE:** On **August 18, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service and/or by attorney service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

*BY OVERNITE EXPRESS*
Hon. Peter H. Carroll
U. S. Bankruptcy Court/Los Angeles Div.
Edward R. Roybal Fed. Bldg. & Courthouse
255 E. Temple Street, Suite 1539
Los Angeles, CA  90012

*BY U.S. MAIL*
*Attorneys for Secured Creditor, Kith Electronics Limited*
Kathy Bazoian Phelps, Esq.
Danning, Gill, Diamond & Kollitz, LLP
2029 Century Park East, Third Floor
Los Angeles, CA  90067-2904
T:  310/277-0077

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Service information on attached page [ ]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 18, 2010 | TRISH MELENDEZ | |
| --- | --- | --- |
| Date | Type Name | Signature |

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

Juliet Y Oh on behalf of Debtor Apex Digital, Inc.
jyo@lnbrb.com, jyo@lnbrb.com

David B Shemano on behalf of Interested Party Courtesy NEF
dshemano@pwkllp.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

**II.  SERVED BY U.S. MAIL**

[SEE ATTACHED SERVICE LISTS]

Apex Digital, Inc.
4722

The CIT Group/Commercial Services
300 South Grand Avenue
Los Angeles, CA 90071

Wells Fargo Trade Capital, LLC
333 South Grand Avenue, Suite 4150
Los Angeles, CA 90071

Alan S. Gutman, Esq.
9401 Wilshire Blvd., Suite 575
Beverly Hills, CA 90212

Kith Electronics Limited
1/F Hing Lung Commerical Building
68 Bonham Stand East, Hong Kong
CHINA

MPEG LA
6312 S Fiddlers Green Circle
Suite 400E
Greenwood Village, CO 80111

Counsel for MPEG LA
Michael H. Steinbuerg, Esq.
Sullivan & Cromwell LLP
1888 Century Park East, Suite 2100
Los Angeles, CA 90067

Apex Digital, Inc.
20 Largest
4722

Covington & Burling LLP
1201 Pennsylvania Ave. N.W.
Washington, DC 20004-2401

Regent USA Inc
1208 John Reed Court
City of Industry, CA 91745

Koninklijke Philips Electronics
1251 Avenue of the Americas
New York, NY 10020

Wintek Group, Inc.
13418 Wandering Ridge Way
Chino Hills, CA 91709

G & J Express Transport, Inc
9121 Blackley Street
Temple City, CA 91780

Disco Vision
2265 East 220th Street
Long Beach, CA 90810

Oracle Corporation
500 Oracle Parkway
Redwood City, CA 94065

MPEG LA
6312 S Fiddlers Green Circle
Suite 400E
Greenwood Village, CO 80111

Vizio
39 Tesla
Irvine, CA 92618

Jiangsu Qiao Yue Shu Ma You Xian
#1, Jing Jiu Road, Ding Mao Jing Ji
Kai Fa, Zhen Jiang City, Jiangsu
**CHINA**

Funai
7-1, 7-Chome, Nakagaito
Daito, Osaka 574-0013
**JAPAN**

Jiangsu Hongtu High Tech Co Ltd
83 Hu Bei Road
Nanijing P.R., Post Code 210009
**CHINA**

Shanghai World Trade Dev. Co., LTD
Unit 118, Suite 1016, Xin Ling Road
Wai Gao Qiao Bao Shui, Shanghai
**CHINA**

Wi-Lan V-Chip Corp.
41 Pullman Court
Toronto, Ontario
**CANADA**

Thomson Multimedia
46, Quai Alphonse Le Gallo
Boulogne
**FRANCE   92468**

Sichuan Digital Telemedia Co. Ltd.
Jiuzhopu Electric Bldg., 6th Floor
High-Tech Park, Nanshan, Shenzhen
**CHINA**

Apex Digital Inc. Ltd.
Unit 37031, 37/F West Tower Shun
Tak Centre 168-200 Connaught Rd Cen
**HONG KONG**